May it please the Court, Jim Hurst on behalf of Abbott Laboratories. Could you raise the microphone a little and speak up, please? Absolutely. Thank you. Jim Hurst on behalf of Abbott Laboratories. Abbott was entitled to summary judgment below for any one of three independent reasons. On Plaintiff's Sherman Act claim, they failed as a matter of law, in our view, to establish either exclusionary conduct, monopoly power, or antitrust injury. If Abbott is correct in any one of those three issues, we were entitled to summary judgment. I'd like to start with the issue of exclusionary conduct, where the question is whether Abbott's unilateral pricing decisions can qualify as exclusionary conduct as a matter of law when there is no evidence nor allegation of below-cost pricing. Our view is the law is uniform and unequivocal. Linkline, Brook Group, Weyerhaeuser, Cascade, in a variety of circumstances, whenever this Court or the Supreme Court has addressed the issue, it has found that pricing cannot be exclusionary unless below cost. There is no recognized exception, either in this Court or in the Supreme Court. I want to emphasize today three reasons why this Court should not create a brand-new exception to the fundamental below-cost rule. First, without the below-cost rule, there is no meaningful way to determine whether Abbott's pricing is exclusionary or not. This Court or a jury would be forced into the role of regulating prices, determining whether Abbott's prices are sufficiently fair to pass muster under the Sherman Act. Right now, the difference between Kalitra's price and Norveer's price is about $13. $22 for Kalitra, $8.57 for Norveer. Plaintiff's theory is that's too narrow. It disadvantages our rivals. Well, what's the right difference? Is it $15? Is it $18? Is it $20? Who decides, and on what basis, what criteria do you use to determine if the pricing is exclusionary? Below, neither the district court nor the plaintiffs offered any answer to that question. This Court and the Supreme Court have been crystal clear that antitrust rules ought to be clear and predictable. The below-cost rule is the only test that provides a clear and predictable rule, and it ought to apply. Second, link line, in our view, Your Honors, controls. That case is analytically indistinguishable from this case. Here. Putting aside whether it's analytically, its rationale is analytically the same, could you just clarify exactly what Abbott does? My understanding is basically that Abbott sells Colectra, which is a single pill combination. True. Norveer in its own protease inhibitor, and it also sells at retail Norveer as a stand-alone protease inhibitor. That's correct. Is that correct? That is absolutely correct, Your Honor. To some extent, which I don't understand, Norveer licenses its competitors to what? Promote their own protease inhibitors as with Norveer? Yes. Is that right? Norveer is a dual-ingredient product, Colectra, which includes Norveer's active ingredient plus a stand-alone, plus a protease inhibitor. And also on the market is Norveer, which is just this booster agent. We, in fact, it's our product, Norveer is our product. We license our competitors to promote, actually encourage them to promote the combination of Norveer plus their protease inhibitors together. As a consumer, you go into your pharmacy with a prescription for a regimen that would include buying Norveer in effect separately. That's right. From the competitors' protease inhibitors. That's right. Right? That's exactly correct. That is, at least technically or structurally, a different scenario from the classic price squeezing, which occurs both at the wholesale level and at the retail level. It is a difference, but it is not a material difference in our view for the following reason. The reason that our, the plaintiffs are saying that our rivals are disadvantaged is because the difference in price between Norveer and Kaletra is too narrow. It's $13. It doesn't give room for these stand-alone protease inhibitors to profitably compete. That's the argument. In Linkline, it was the exact same argument. AT&T sold, there was allegedly an overly narrow difference between the wholesale price for DSL and the retail price for DSL. And that difference wasn't sufficiently wide to allow rival DSL retail sellers to compete. In our case, the consumer pays for Norveer. In Linkline, the competitors paid for wholesale DSL. But in both cases, the theory is the same, that the differential isn't wide enough to allow the competitors to compete profitably. In Linkline, the Supreme Court held that the below-cost rule applies. It ought to apply here for the very same reason. If that's correct, and if Linkline applies controls, is there any reason to go any further to consider a monopoly, power in the boosted market, or to consider antitrust injury, or to consider what the appropriate measure of below-cost pricing is for this case? This Court has the discretion to go beyond. That's not my question. I understand that. My question is, is there any need to? The answer to your question is no. If you agree with us that the below-cost rule applies, it would end this case. That's true. The third reason I just want to, in terms of whether the below-cost rule applies, the plaintiffs haven't offered any principal reason to create a new exception to the below-cost rule. Their main argument is that the below-cost rule ought not apply when the case involves price increases. That's their argument. But Cascade itself involved price increases. In PeaceHealth, PeaceHealth was the hospital there. They raised their prices, but they raised their prices less for the bundled service than for the unbundled service, thereby creating the discount that was challenged. So that was a price increase test, and yet this Court held the below-cost rule applies. Fundamentally, it also doesn't matter. It's irrelevant whether the challenged price structure resulted from a price increase or a price decrease. Why? Remember what the focus is. The question is whether the price structure that's challenged excludes an equally efficient competitor. That turns on whether there's a marginal profit in that competitor's continued or future sales, i.e., it doesn't matter what the historical structure was, whether it was higher or lower in the past. The question is, does the current structure exclude the equally efficient competitor? So, yes, the below-cost rule, of course, should apply, regardless of whether the case involves price increases or price decreases. Quick, before I move on to monopoly power. All right. Before you do that, let me ask you one question. The Norveer itself, which is, in this case, combined with something by your company and its competitors, and you license the use of Norveer to the competitors. You sell Norveer also as a separate product? We do. That's correct, Your Honor. And what do people do with the Norveer if the finished product seems to be the thing that works well? What do they do with the Norveer? There's two choices for patients out there. They can take Kaletra, which is the booster plus a PI, a dual-ingredient drug, and they work together. Alternatively, there's more than two choices, but alternatively they can buy Norveer from us and they can buy a competitor's PI together and just take two pills. In fact, that's what most patients are doing nowadays. They're taking Rayataz, which is the number one prescribed PI, along with Norveer. So they just take two pills and they get the same effect, the boosting effect from Norveer. Mr. Hirsch, just to clarify, because I heard George Reinhardt ask the question somewhat differently, and that's why, when I started out, I wanted to clarify what was going on here. He asked about competitors using Norveer. And I understand they don't use it, except they can promote it. That's exactly correct, Your Honor. As helpful to their own protease inhibitor. That is you are exactly correct.  Two separate pills? Two separate pills. The competitors don't actually use Norveer themselves. All they have is a license to our patent over Norveer, and we give them a right to go out to the doctors and say, you want to encourage your patients to use Rayataz, a competitive PI, and Abbott's Norveer together. So we license our competitors to encourage that combination. They're not actually using Norveer itself, Your Honor. Now, let me turn to one quick issue. There's been a lot of ink spilled in the briefs about whether or not Kaletra is a bundled product and therefore falls within the Cascade case. Just two quick points. One is that, in our view, is a red herring. It's not relevant. Whether Kaletra is a bundled product, it's important only to determining how you calculate below-cost pricing. That's all it's relevant to. If Kaletra is a bundled product, a Cascade-type calculation would apply. If Kaletra is not a bundled product, a Brook Group-type calculation would apply. But in either case, you have to show below-cost pricing, and there's no evidence or allegation of that in this case. Monopoly. Let me just ask you a question. The district court relied on our Eastman-Kodak case for a market-leveraging theory. Let me just ask, what validity do you think Eastman-Kodak still has in what area, if any? We have our views that Eastman-Kodak was wrongly decided, but it's the law in this circuit, and so it remains the law. It just happens to be irrelevant. Eastman-Kodak dealt with a different type of exclusionary conduct, a refusal to deal. Our case deals with pricing issues, and there is no exclusionary conduct here, and that's why Kodak does not control in this circumstance. Not only is there not a refusal to deal, the idea was that us increasing Norbeer's price would force people to go elsewhere and not take Norbeer. Well, Norbeer's sales have quadrupled since the price increase, so there's been no refusal to deal. It's out in the marketplace in enormous quantities. I'm running out of time. Let me just make three quick points on monopoly power that I believe are definitive. First, far from being a monopolist, our competition has overtaken the market. Rayataz is now the number one prescribed PI with 17% more prescriptions than Abbott's Kalitra. There is no case in Sherman Act history where the number two player in the market has been accused of monopoly as far as we've been able to determine. Number two, our competitors are taking market share from us in large volumes, despite increasing their own prices. That is a sign of not a market over which Abbott has a monopolistic stranglehold, but rather a market that we are losing rapidly. Finally, and this is dispositive under rebel oil, there is absolutely no evidence in the record, and I think it's agreed between the parties, our competitors have the ability to fully supply this market. That is dispositive. A monopolist is a monopolist only if they can, by reducing their own output, reduce market-wide output. If the competitors can come in and supply product to respond to a company's efforts to reduce supply in the market, there's no monopoly by definition. Here, our competitors are seven of the largest pharmaceutical companies in the world. It's agreed between the parties that they can fully supply the marketplace, and, in fact, Bristol-Myers Squibb has quadrupled its output since the Norveer price increase. I'm going to reserve my remaining time for rebuttal. Let those be questions. As we accepted the definition for purposes of summary judgment. Thank you, Your Honor. Good morning, Your Honor. Richard Wiebe for the plaintiffs in this case who are a class of HIV patients and health plans who pay for their drugs. The central question here is harmed competition. A rational juror could easily find from the evidence in the record that Abbott harmed competition in the boosted P.I. market by raising the price of Norveer 400 percent. It strikes me that the question is slightly different from that. The question is whether you've got a monopoly-leveraging theory that can stand by itself without any showing either of exclusionary conduct like a refusal to deal or predatory below-cost pricing, neither of which has been alleged or shown. Monopoly leveraging itself is a form of exclusionary conduct. By raising the price of Norveer here 400 percent, they were able to increase the cost to consumers of using their competitive products. Sure. So was AT&T. I mean, so there's a price squeeze. Or so it's a bundle discount. Maybe this is kind of a hybrid of both, but it sure waddles and quacks like a classic price squeeze. I mean, that's the competitive effect, is to put pressure on the competitors, right? No, Your Honor. With all due respect, I think it's instructive to look at ImageCheck, this Court's decision in ImageCheck. Well, ImageCheck isn't worth anything in light of Linkline to the extent that it is not based on a refusal to deal. Linkline was a refusal-to-deal case. Linkline was not a monopoly-leveraging case. Monopoly leveraging involves the use of monopoly power in one market to monopolize a second, different market. You're taking that monopoly power, you're extending it into a second market. The products in the second market are no longer competing on their merits. One product, in this case Kalitra, is being sheltered from head-to-head competition by this extension of monopoly power. In Kodak, the two markets were the market for parts for Kodak copiers, the market for servicing those copiers. Kodak refused to sell its parts to independent servicers of those products. Therefore, Kodak's service was no longer competing on its merits with the service of those competitors because they couldn't have access to the parts. Now, look at the injunctive relief that this Court approved in Kodak. What was it? It was a requirement that Kodak not discriminate in its pricing of its parts, that it sell the parts to its competitors in the service market at the same price that it sold them to its own customers when it provided service. Now, why is that important? It illustrates that monopoly leveraging can be exercised in a number of different ways. One way of exercising your monopoly power in that first market is to refuse to deal. A second way, which this Court recognized when it saw that it had to require non-discriminatory pricing, was that you can exercise that monopoly power in the price so high that you're impairing the competition in the second market. Those are both ways of leveraging your monopoly power in that first market into the second market. Link line. Link line. There was no monopoly in the second market. There was no attempted monopoly in the second market. What were the two markets? If you don't get there unless there's some kind of exclusionary practice or predatory pricing that's below an appropriate measure of cost, which we don't have to decide here. Predatory pricing is a completely distinct theory. The ---- Well, yeah, but you're ---- I mean, here's the point, it seems to me. Your claim is price-based. Our claim? You're not claiming a group boycott. You're not claiming tie-in. You're not claiming all sorts of other things that might be exclusionary. You're claiming a price-based conduct in effect, right? I don't think that you can lump all price-based conduct together, Your Honor. Predatory pricing is a distinct kind of scheme where you're operating in a single market, you are trying to undercut the prices of your competitors, drive them out of the market, then come back and recoup it later. The beauty of monopoly leveraging scheme from Abbott's point of view is they don't have to cut their price. They didn't have to cut their price at Calitra. They can achieve the same exclusionary conduct by raising the price of Norco. It's not a question of raising the price or lowering the price. It's a question of whether the price is below an appropriate measure of cost, isn't it? No, Your Honor.  Not in a leveraging case. And that's why it's so important to look at Linkline and to realize that the two markets there, the first market was the market for DSL services. AT&T monopolized that. That was the so-called upstream market. The downstream market where AT&T competed with its distributors to whom it was providing Internet services. That includes cable, wireless, no monopoly there. The Supreme Court says it in section in footnote 2. And if you look at footnote 2, this is what's crucial. The Supreme Court says if there had been monopoly power in that second market, there would have been a monopolization claim. That's the crucial difference between this case and Linkline. Monopoly leveraging remains the law of this circuit. It remains a viable claim. Linkline does not affect it because it is not a monopoly leveraging case. The this Court's decision in Cascade does not control here for two reasons. The first reason is Cascade is not a bundle of separate products. Lopinavir cannot be sold separately. It's illegal to sell it separately. Abbott doesn't sell it separately. Abbott's own financial analyst says it's impossible to determine whether the cost of Lopinavir, what the cost of a hypothetical Lopinavir pill would be. And without knowing the actual cost of a hypothetical Lopinavir, of an actual Lopinavir pill, you can't apply the Cascade test. Abbott's economic expert says Calitra is not a bundle discount. Now, because Calitra is not a bundle of two separate products, that defeats the whole policy purpose of the Cascade test, which is to provide a bright line rule. Cascade says its test, quote, provides clear guidance, close quote, because, quote, a seller can easily ascertain its own prices and costs of production to calculate whether its discounting practices run afoul of the rule. That's at page 907. But that's not the case here. There's no way a company in advance or a court after the fact can look at a hypothetical cost that doesn't exist. The second reason why Cascade doesn't apply is the same reason Linkline doesn't apply. The low-cost pricing and monopoly leveraging are two fundamentally different types of harm, market harm. Cascade seeks to prevent the harm by the low-cost pricing that undercuts equally efficient competitors and excludes them from the market. Sotomayor Okay. Well, let me ask this in a kind of simple-minded way. You represent people essentially who purchase drugs, medicines. Now, the conduct here that you are objecting to is Norvitra, Abbott's essential has a monopoly of this product, Norvitra. Norvitra. Norvitra. Okay. Norvitra. Now, the conduct that you're objecting to is the increase in the price of that product, which you say your claim is results in what? By exercising its monopoly power over Norvitra to raise it to a super competitive price, something it could only do because it had a monopoly in Norvitra, it's raising the cost of using, Abbott is raising the cost of using the products that compete with Kalitra, the product, the PIs of other drug companies. Norvitra. Yes, but that really is doing that because of the price increase of Norvitra. Yes. And we know that in a market economy, increasing a price, you know, is something that's done if you can in order to make more money. So that can't in and of itself be bad. And I'm having trouble seeing, because the increase is caused by the increase to Norvir, how we get a doesn't seem like there's really, for your purposes, a separate market there to leverage into. Norvir is a separate market, and for purposes of this appeal, that's settled. That's not in dispute on appeal. Norvir is one separate market. Well, I do understand that. For boosted PIs is a second market. Where price hiking becomes objectionable in a market economy is where you have, first of all, a monopoly in the product whose price you're raising. And second of all, you're raising it for the purpose and with the effect of impairing competition in an entirely separate market. That's what happened in Kodak, in the image data. Well, but they say that there's no, you know, there's really no monopoly. You haven't had any. All that's happened is that Norvir's price has gone up, but the product that it's producing in that second market hasn't achieved any monopoly. And because the other people are doing it better, it's so lost out. That's the question of monopoly power. And that's a classic question of fact. The district court ruled that there were fundamental factual disputes. We dispute their market share calculations. There's no doubt that when the price hike occurred in December of 2003, Calitra had monopoly market share in the boosted PI market. It's continued to have that share. But the booster people themselves are all competing. They're competing with the handicap of having Abbott put a big ball and chain around their legs while Calitra races ahead. Norvir is that ball and chain. Norvir is essential to using any of these other boosted PIs. By raising the price of Norvir, they have handicapped those competitors in that entirely separate market, the boosted PI market. Well, it sounds like bad policy to allow this, but it doesn't seem to violate antitrust laws. As I understand it, anyway, the Supreme Court said that unless you either claim there's a duty to sell the competitor, which is not involved in this case, or unless your ultimate price is below cost, there's nothing that violates the antitrust law. Now, there may be other laws that should prohibit this type of conduct from regulating drugs, but it doesn't seem to violate the general policies of antitrust law. I believe Your Honor is referring to the Linkline decision. And, again, it's essential that the Court go back and look very closely at footnote 2 of Linkline. Footnote 2 explains that there was no monopolization or threat of monopolization in that second market. AT&T had a monopoly in the first market. No monopoly power in the second market. Is there any decision in any other circuit that supports this theory now? That supports monopoly leveraging? Yeah. It is still recognized in the second circuit, for example. Since Linkline, has anybody? Which circuit? I'm sorry. The second circuit. But I do not believe there have been any monopoly leveraging decisions post-Linkline. Linkline just came out a little more than a month ago, I believe. But, again, what the Supreme Court says in that footnote is if there had been monopoly power in both markets, which is what we're alleging here and what the district court found, we had demonstrated facts from which the jury could find monopoly power in both markets. The Supreme Court said if there's monopoly power in both markets, then you can have a monopolization claim. That's the crucial distinction of Linkline from this case. And that's the whole purpose of monopoly leveraging law is to look at cases where that monopoly power is being extended into a second market to assist or to impair competition in that market. You're in the red now. Thank you. Your Honor. Your Honor, I just want to make three brief points. First, counsel still not identified any exclusionary conduct. He argued that monopoly leveraging itself is a form of exclusionary conduct. This court rejected that very argument in Alaska Airlines. The Supreme Court rejected that very argument in Verizon versus Tranco in 2004. Point two, counsel said that Linkline doesn't control because it's not a monopoly leveraging case. That's not correct. Linkline is a monopoly leveraging case. AT&T had a monopoly over wholesale DSL, and they allegedly used that monopoly through pricing decisions to leverage it to gain a stranglehold over a different market that they were allegedly attempting to monopolize, a regional DSL market. That was the allegation. It was a monopoly leveraging case. Third, I understand this Court ---- It came out of which circuit? It came out of this circuit, Your Honor. Here. Yes. Last point. Judge Romer, you are absolutely correct. You do not need to reach all three issues in this case to end this particular case. But in your discretion, if I can make a pitch, there are copycat cases, 17 plaintiffs, allegations of damages exceeding a billion dollars, where resolving the three issues could potentially, as a matter of judicial economy, end those cases definitively. Thank you, Your Honors. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Reinhardt, Rymer